**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERNARD KATZ d/b/a TELESONIC PACKAGING CORP., <br> *Plaintiff*, <br> v. <br> JOSEPH APUZZO, JR and REGAL TRADING, INC. d/b/a REGAL COMMODITIES, LLC, <br> *Defendants.* | Civil Action No. 19-cv-16426 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter arises out of an alleged breach of a contract for the purchase of coffee pods. Defendants moved to dismiss the Complaint, arguing that Plaintiff lacks standing to sue, that Plaintiff is prohibited from suing for failure to comply with New Jersey's business registration and reporting statutes, and that Plaintiff's claims are insufficiently pled. *See* D.E. 40. The Court reviewed the parties' submissions[1] in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[2] For the reasons stated below, Defendants' motion is granted.

---

[1] Defendants' brief in support of their motion to dismiss, D.E. 41 ("Br."); Plaintiff's opposition, D.E. 45-1 ("Opp."); and, Defendants' reply in further support of their motion to dismiss, D.E. 47 ("Reply"). Plaintiff filed a "Notice of Errata" concerning certain errors in the Opposition, D.E. 45-2, along with a revised version of Katz's Opposition, *id*. at 3-22. The Court also considered these documents.

[2] Katz filed a motion requesting oral argument as to the motion to dismiss. D.E. 52. However, the Court has determined that oral argument is not necessary pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). Katz's motion for oral argument is therefore denied.

I.  BACKGROUND

Plaintiff Bernard Katz alleges that he does business as, and is the sole proprietor of, Telesonic Packaging Corp. ("TPC"). D.E. 1 ("Compl.") ¶ 1, ¶¶ 7-9. TPC is a packaging machine business that has been an "innovator of successful food packaging systems." *Id*. ¶ 11. Katz recognized the potential growth of "single service coffee consumption," and "perfected unique packaging machinery and packaging materials to offer coffee roasters . . . to compete with the Keurig product." *Id*. ¶ 12.

Defendant Regal Trading, Inc. d/b/a as Regal Commodities LLC ("Regal") is a New Jersey based company. *Id*. ¶ 2. Defendant Joseph Apuzzo, Jr. is the CEO of Regal. *Id*. ¶ 5. Katz claims that Apuzzo contacted him concerning Regal's need to supply Trader Joe's with single use coffee pods. *Id*. ¶ 15. Katz agreed to meet Regal's needs and promised to "ramp up production . . . and back-up equipment" to support delivery of Katz's pods to 400 Trader Joe's stores. *Id*. ¶ 15.

Katz indicates that he manufactured 3,000,000 pods without a purchase order so that Regal could accelerate deliveries and expedite its cashflow. *Id*. ¶ 20. On July 9, 2014, TPC and Regal entered into a purchase order for Katz to supply 50,000,000 pods at $.08 each. *Id*. ¶ 21. TPC and Regal also entered into another purchase order on January 7, 2016 – this time for the supply of 25,000,000 pods at $0.07 each. *Id*. ¶¶ 21-22. Katz alleges that TPC and its Chinese supplier purchased additional equipment and warehouse space to meet Regal's demand while also providing additional free support to Regal to ensure "the equipment was functioning properly" to "avoid unnecessary delay of delivery to Trader Joe's." *Id*. ¶¶ 15-19; *id*. ¶¶ 27-28.

Katz states that between September 30, 2016 and November 30, 2016, Regal returned and refused to pay for 3,720,000 pods, claiming they were defective. *Id*. ¶ 23. Regal then refused to accept delivery of another 11,000,000 pods. *Id*. Katz claims Regal refused to provide him with samples of the defective pods or any "expert proof" of a defect and also did not permit him to cure

the defects through replacement pods. *Id.* ¶ 24 (citing U.C.C. § 2-508). Instead, Regal allegedly entered into a contract with a competitor of Katz, LBP Manufacturing, for the provision of pods. *Id.* ¶ 25. Katz asserts that Regal took delivery of his pods until LBP could "ramp up their product to allow them to take over TPC's business with Regal." *Id.* ¶ 25-26.

Katz filed his Complaint on August 5, 2019. D.E. 1. The Complaint asserts counts for breach of contract and for breach of the covenant of good faith and fair dealing. *Id.* ¶¶ 29-45. Defendants moved to dismiss the Complaint. D.E. 8. In response, Katz moved to amend his Complaint and to add a claim for fraud. D.E. 14. Defendants opposed the motion. D.E. 15. On March 26, 2020, the Court terminated the motion to dismiss and the motion to amend pending a determination as to Plaintiff's standing. After limited discovery on the issue of standing, Magistrate Judge Mannion ordered Defendants to file a renewed Fed. R. Civ. P. 12(b) motion by November 27, 2020. D.E. 39. The present motion followed.

## II.    STANDARD

In deciding a Fed R. Civ. P. 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack. A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). Where a 12(b)(1) motion attacks the complaint on its face and does not contest the facts alleged by the non-moving party, the 12(b)(1) motion is treated "like a 12(b)(6) motion" and the Court must "consider the allegations of the complaint as true." *T.L. by & through Latisha G. v. Pennsylvania Leadership Charter Sch.*, 224 F. Supp. 3d 421, 429 (E.D. Pa. 2016) (citing *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016)).

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction." *Evanston*, 2019 WL 1916203, at *2 (quoting *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). As to factual attacks, courts are permitted "to weigh and consider evidence 'outside the pleadings' to decide whether subject matter jurisdiction is proper." *Id*. Regardless of whether the attack is facial or factual, "the Plaintiff has the burden to prove that the Court has jurisdiction." *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

Here, Defendants' arguments primarily rely on matters outside the Complaint. *See* D.E. 40-1 – D.E. 40-23. Accordingly, the Court construes Defendants' motion as a factual attack, and the Court will consider and weigh evidence beyond the pleadings to determine whether it has jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).[3]

### III.  ANALYSIS

#### A.  Standing

Defendants argue that Katz lacks standing to bring this case because he is not a party to the purchase orders he claims Regal breached. Specifically, Defendants assert that Katz is not a sole proprietor of TPC, as he claims. Instead, Defendants continue, there is a separate corporate entity

---

[3] The parties agree that because the Court permitted limited discovery as to the issue of standing, the Court may evaluate Defendants' factual attack on the Court's subject matter jurisdiction at this stage of the proceedings. Br. at 3, n. 1; Opp. at 11 n. 2.

Telesonic PC, Inc., ("TPCI"),[4] a Delaware corporation Katz owns, Br. at 2, which is the entity subject to the purchase orders.

Plaintiffs seeking to establish Article III standing "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)). The first element is at issue here. An injury-in-fact requires plaintiffs to show "'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" *Finkelman*, 810 F.3d at 193 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)).

Importantly, as to the injury-in-fact requirement, "[o]rdinarily, a stranger to a contract acquires no rights thereunder." *In re Stone & Webster, Inc.*, 558 F.3d 234, 241 (3d Cir. 2009) (quoting *Guardian Const. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. Ct. 1990)); *see also Rieder Communities, Inc. v. Twp. of N. Brunswick*, 546 A.2d 563, 567 (N.J. Sup. Ct. App. Div. 1988) ("Unless [a party is determined to be a third-party beneficiary of a contract], a third party has *no right of action* under that contract despite the fact that he may derive an incidental benefit from its performance." (emphasis added (quoting *Gold Mills, Inc. v. Orbit Processing Corp.*, 297 A.2d 203, 204 (N.J. Sup. Ct. Law. Div. 1972)).[5] Relatedly, because the

---

[4] As discussed below, TPCI and TPC are one in the same. The Court uses different acronyms here to analyze the parties' arguments.

[5] Defendants appear to argue that Plaintiff lacks standing under both Delaware and New Jersey law. *See* Br. at 19. Plaintiff does not advocate for the application of another state's law or disagree with Defendants' statements of the law. As discussed above, Delaware and New Jersey law are in

existence of a contract is necessary to assert a claim for breach of the covenant of good faith and fair dealing, *Cumberland Farms, Inc. v. New Jersey Dep't of Env't Prot.*, 148 A.3d 767, 779 (N.J. Sup. Ct. App. Div. 2016), a person may not bring a claim for breach of the covenant of good faith and fair dealing pursuant to a contract to which he is not a party. *See also Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) ("[T]he implied covenant requires '*a party in a contractual relationship* to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." (emphasis added)).

Plaintiff does not dispute the applicable law nor does he argue that he is a third-party beneficiary to the purchase orders. Rather, Plaintiff contends that he is a party to the contracts because TPC is the fictious name for him operating as a sole proprietorship. *See* Opp. at 8-11.

As to the purchase orders, the first order is dated July 9, 2014, and is between Telesonic Packaging Corp, located in Wilmington, DE 19802, and Regal Commodities, located in Paterson, NJ 07501. D.E. 1-1 at 2.[6] The second purchase order is dated January 7, 2016, and is between Telesonic Packaging Corp at the same address and Regal Commodities located in Totowa, NJ 07512. D.E. 1-1 at 4. Defendant is correct that the orders appear to be between two corporate entities, *see* Br. at 14, and there is no indication as to TPC's status as a d/b/a of Katz.

Defendants also cite to documents produced by Katz, claiming that they show TPC and TPCI are one and the same. Defendants first point to a "Form S-1 Registration Statement Under the Securities Act of 1933" for TPCI. D.E. 42-2 at 9. The document provides that TPCI's address

---

accord on this issue. Accordingly, the Court resolves the issue of Plaintiff's contractual standing under both New Jersey and Delaware law.

[6] Page numbers for exhibits reflect the page numbers generated by the Court's electronic filing system. Use of "tr." indicates that the cited material appears on the page of a transcript.

is 805 East 13th Street Wilmington, Delaware 19802 – the same address listed for TPC in the purchase orders. D.E. 1-1 at 2, 4. Katz also produced a "Franchise Tax – Annual Report," *id*. at 14, and a "State of Delaware Certificate of renewal and Revival of Charter," *id*. at 10, which reflect that TPCI is a Delaware corporation. Katz's interrogatory answers and production further disclose that Katz is the sole shareholder and President of TPCI, *id*. at 5, D.E. 42-2 at 9.

Katz also submitted TPCI's tax returns and his personal tax returns. Katz admitted in an interrogatory that for the tax years 2014 through 2016, TPCI's tax returns "included revenue from Telesonic Packaging Corp." *Id*. at 5. At his deposition, Katz further testified to the following:

> Q. So Just to be clear, am I correct . . . that all of the income and revenue of your sole proprietorship d/b/a Telesonic Packaging Corp. for 2014, 2015, and 2016 is reflected in Telesonic PC Inc.'s tax returns for those years? Am I correct about that?
>
> A. That's what's come up yes.

D.E. 42-3 at 18, tr. 60:3-20. Katz also testified that Regal's payments for the purchase orders were made to his business during those years. *Id*. at 18, tr. 58:1-6. And TPCI's 2014 federal income tax return attributed $1,993,201 worth of inventory in "[m]achinery and cups" as assets of TPCI, not TPC or Katz. D.E. 42-3 at 21, tr. 71:20-72:13; D.E. 42-4 at 7. The same year's return attributed $3,542,552 in sales of "[m]achinery and cups as income" to TPCI. D.E. 42-3 at 21, tr. 72:14-24; D.E. 42-4 at 7. The return also reported TPCI's business activity as "manufacturing" and the product as "packaging machines." D.E. 42-4 at 10. Mr. Katz's personal income tax returns for the years 2014, 2015, and 2016, on the other hand, do not report any income derived from "business income." D.E. 42-5 at 7-8; *id*. at 37; *see also* D.E. 42-3 at 28, 100:6-101:18. Katz acknowledged that he submitted his and TPCI's tax returns under penalty of perjury, but stated that he would not have signed the documents had he known they were made under penalty of perjury at the time. *Id*. at 19, tr. 64:1-24; *id*. at tr. 63:14-18.

Defendants also provide a patent assignment that Katz submitted to the United States Patent and Trademark Office. *See* D.E. 40-22 at 21-23. The patent is for a "a cartridge for beverage dispenser" (the "Patent"), Bernard Katz is identified as the inventor, *id*. at 2, and the assignment is dated November 24, 2015. *Id*. at 23. Under the assignment, Katz assigned the Patent to "Telesonic Packaging Corp., located at 805 East 13th Street, Wilmington, DE, 19802." *Id*. at 22. The assignment further describes Telesonic Packaging Corp as a "corporation duly organized under and pursuant to the laws of the State of Delaware." *Id*. At his deposition, Katz admitted that he submitted the document to the United States Patent and Trademark Office. D.E. 42-3 at 33, 119:11-14.

Taken together, these documents show that TPCI was the entity subject to the purchase orders, rather than Katz individually or as sole proprietor. The evidence further demonstrates that TPC is TPCI. Katz did not attribute TPC's income – including the revenue derived from the purchase orders with Regal – to himself, but instead to TPCI. D.E. 42-3 at 18, 60:3-20. Katz attributed TPC's assets as TPCI's, not his. D.E. 42-3 at 21, 71:20-72:13; D.E. 42-4 at 7. In addition, TPCI and TPC shared identical business operations and addresses. D.E. 42-4 at 10; D.E. 1-1 at 2, 4. Katz submitted all this information to the United States Internal Revenue Service under penalty of perjury. D.E. 42-3 at 19, tr. 64:1-24. And Katz clearly treated TPC as separate from himself in the Patent assignment. *See* D.E. 40-22 at 21-23. The assignment document expressly referred to TPC as a Delaware corporation, not a sole proprietorship, and Katz assigned the Patent from himself to TPC. If TPC and Katz were the same, as Katz claims, there would be no need for such an assignment.

Katz points to a bank account through which Regal made payments to TPC. *See* Opp. at 10, 13-14. The bank account is titled "Bernard Katz DBA Telesonic Packaging Co. C/O Ames

8

Engineering 805 E 13th St., Wilmington DE 19802-5000." *See* D.E. 45-3 at 5-35. But the account's name does not negate that the funds deposited into the account were ultimately attributed as income of TPCI on its tax returns, which Katz signed under penalty of perjury in his capacity as TPCI's President. *See* D.E. 42-3 at 19, tr. 62:9-16; *id*. at tr. 63:14-18.[7] Katz also argues that the evidence on which Defendants rely was incorrectly prepared by Katz's professionals. D.E. 42-2 at 5; D.E. 42-3 at 33, tr. 121:5-122:8. Yet, when asked whether he took any steps to correct the patent assignment or his taxes, Katz refused to answer either due to lack of knowledge or based on his Fifth Amendment right against self-incrimination. *See id*. at 34, tr. 122:23-123:2; *see also id*. at 24, tr. 84:7-18. Although Katz was permitted to assert his privilege against self-incrimination in this civil matter, *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994), such assertion "may give rise to an adverse inference against the party claiming its benefits." *Id*. (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). The Court draws such an adverse inference here.

Defendants' evidence demonstrates that TPCI was the entity that conducted business with Regal. Katz is therefore not a party to either purchase order. D.E. 1-1 at 2-4. Under Delaware and New Jersey law, Katz lacks standing to pursue the breach of contract and breach of the covenant of good faith and fair dealing claims asserted. *In re Stone & Webster, Inc.*, 558 F.3d at 241; *Rieder Communities, Inc.,* 546 A.2d at 567; *Cumberland Farms, Inc.*, 148 A.3d at 779; *Dunlap*, 878 A.2d at 442. Accordingly, Defendants' motion to dismiss the Complaint based on lack of standing is granted.

---

[7] In his Motion for Oral Argument, D.E. 52 at 5, Katz claims these statements also show amounts paid to a Chinese company for the pods at issue. Assuming this is true, this evidence does not alter the Court's conclusion since the "Cups and Machinery" purchased were reported as inventory of TPCI in the relevant tax returns. D.E. 42-3 at 21, tr. 71:20-72:13; D.E. 42-4 at 7.

### B. Dismissal With Prejudice

Defendants argue that the Complaint should be dismissed with prejudice because, according to Defendants, TPCI has not complied with New Jersey's registration and reporting requirements and therefore cannot sue in New Jersey courts. Br. at 20-22; *id*. at 27. Specifically, Defendants contend that the New Jersey Business Corporation Act, N.J. Stat. Ann. 14A:1-1 to 17-18 ("NJBCA") and New Jersey Corporation Business Reporting Act, N.J. Stat. Ann. 14A:13-14 to -21 ("NJCBRA") require foreign businesses operating in New Jersey to make certain filings with the state and that non-complaint companies may not sue in New Jersey state courts and federal courts in New Jersey siting in diversity. *Id*. at 20-21. Defendants continue that TPCI has not complied with the statues and therefore may not sue here.

However, assuming that Defendants are correct, legal authority within this district (including that cited by Defendants) indicates that a non-compliant foreign corporation can retroactively comply with the NJBCA and NJCBRA to then gain access to New Jersey courts. *Horgan Bros. v. Monroe Prop.*, L.L.C., No. 07-CV-3028 (NLH), 2010 WL 2674166, at *4 (D.N.J. June 30, 2010) ("[B]ecause Horgan did not comply with the [NJCBRA], it cannot proceed with its suit in this Court at this time . . . Horgan's case is dismissed, without prejudice. Were Horgan to satisfy its obligations under the Act, then it may return to the Court and seek to re-open its case." (*First Fam. Mortg. Corp. of Fla. v. Durham*, 528 A.2d 1288, 1295 (N.J. 1987)); *Am. Ests., Inc. v. Marietta Cellars Inc.*, No. CIV. 10-6763-WJM, 2011 WL 1560823, at *3 (D.N.J. Apr. 25, 2011) ("Even if [Plaintiff] had failed to comply with N.J. [Stat. Ann.] 14A:13–16, this Court would not dismiss [Plaintiff]'s complaint with prejudice. Instead, the appropriate remedy would be to allow [Plaintiff] an opportunity to file the necessary activity reports and/or taxes, and, if [Plaintiff] met

10

its obligations, allow it to proceed with its claims."). Moreover, TPCI is not yet a party to this case. Accordingly, the Court's dismissal of the Complaint is without prejudice.[8]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, D.E. 40, is granted, Plaintiff's Motion for Oral Argument, D.E. 52, is denied, and Plaintiff's Motion to Substitute Party, D.E. 58, is denied. An appropriate Order accompanies this Opinion.

Dated: June 25, 2021

John Michael Vazquez, U.S.D.J.

---

[8] Katz's counsel recently filed a Suggestion of Death, noting the passing of Katz. D.E. 56. Katz's counsel subsequently made a Motion to Substitute Party pursuant to Fed. R. Civ. P. 25(a)(1), D.E. 58. In light of the Court's finding above that Katz has no standing to assert the claims in this matter, the motion is denied.